Richardson, J.
dissenting.
The question is whether a hired house carpenter, when employed at the circular saw of a steam mill is, thereby, placed within or without the employment, trade or usage of such carpenters. If within, the verdict is right; if without, it is to be set aside, If John Howell had been put in a common saw mill; which is not a perilous vocation ; hone could question that such use of him would have been at the risk of his hirer; not on account of the risk, but the change of employment in which the loss happened, If John had been employed generally, in the defendants’s steam mill, the hirer would, at his own risk, have so employed John: because such new vocation would have been out of the employment, trade or usage of a house carpenter. No one can doubt that such liability would have been the law of that case.— Again, none can question that, by putting John at the circular saw, he was destroyed. But if so employed, it Was in the mill; and we can make no distinction between the full and partial employment. This constitutes the whole case.
Por, I presume, it cannot be supposed that by simply passing along the street, M’Lanchlin assented to all that his carpenters were or might be employed at, within the shop and steam mill. This would be a wild assumption; and would justify the defendants, if his boiler were to burst and blow up M’Lauchlin’s three other carpenters ; when employed in some harmless part of the machinery. Were such a catastrophe to happen, the question would be as it is now — at whose risk, or for whose profit, was the steam employed ?— And by whom were the carpenters brought to this addi *91 tional vocation of attending to any of the steam operations 1 The error lies in supposing that, unless this new vocation dangerous, the hirer is justifiable. The entire evidence seemed to make up this issue — was the use of the circular saw dangerous or not 1 Whereas the law is as follows : “ As to the use of the thing hired — there is on the part of the hirer, an implied obligation; not only to use the thing with due care and moderation, but not to apply it to any other use than that for which it is hired. Thus, if a horse is hired as a saddle horse, the hirer has no right to use the horse in a cart, or to carry loads, or as a beast of burden. If a carriage and horses are hired for a journey to Boston, the hirer has no right to go with them on a journey to New York. So, they are hired for a week, he has no right to use them for a month. And, if the thing is used for different purposes from that which was intended by the parties, or in a different mer, or for a longer period, the hirer is not only responsible for all damages, but if a loss occurs, although by inevitable casualty, he will be responsible therefor. In short, such misuser is deemed a conversion of the property, for which hirer is deemed responsible.”
onBail ments,0^^ Kent, 456; 01lPa’^ W-5 Mass.’®.. 104; i00”;?" ^1’ 47.'^ Mill, 43i.’
Such is the undisputed law of bailments by hiring. Now, is it not plain, in the language of the appeal, that the jury have given a verdict contrary to such law ? They clearly misunderstood what Hobart calls “ the point and sense of law.” To use his quaint figure, they have left the kernel to take up with the shell.
The strict legal question is — was not the employment of a carpenter to manage a saw, propelled by steam power, a new faculty and vocation to a mechanic who is taught only to propel his own saw 7 But instead of deciding this question, the verdict amounts to this — that there is no great danger in this particular part of the very complex steam saw mill. And it is conceded that John was employed in this very part of the mill; but this was a change of John’s vocation, and caused his death. This is the point and sense of the law.— Now then, I ask, unless the hirer pay for the loss, what becomes of his liability, so plainly laid down by the law, for any change in the employment ? It is not enough to answer, it was a case for the jury. This Court is the guardian of the law; and it is not to be so frittered away. Here, permit me to observe, that proper judicial respect for verdicts, consists : first, in allowing to juries all competent evidence without pre-judging its weight — because all the evidence is for the jury; and secondly, in supporting such verdicts, on facts, as do not mistake or infract the law. But when they do, it is a dirty to order a new trial without prejudice, in order to preserve the law, together with the true useful agency and great value of such trials. We would have the kernel, not *92 merely the shell of the law and of jury trial too. In a word, tjje just¿ce 0f a jury must be like all judicial justice, the dictate of the laws of the land — and not merely of some sup-p0se(j morai system, or fitness adopted for the occasion.— Such liberties tend greatly to degrade the law, pervert its justice, and weaken public confidence in jury trials. This case ought therefore to be reconsidered, as one in which the law, as it is, was clearly misconceived by the jury. We have several appeals to dismiss as mere verdicts upon evidence, which will illustrate the distinction between such verdicts, and verdicts that depart from settled law.
O’Neall, J. concurred.